UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-cv-60017-ALTMAN/Hunt

**MEDSOFTSYS, INC.,**
*a Florida corporation,*

    *Plaintiff,*

v.

**COOLMOON CORPORATION,**
*a Florida corporation*, *et al.,*

    *Defendants.*
_____/

# ORDER

A software company, MedSoftSys, Inc. ("MSS"), filed a state-court complaint against its independent contractors, Leonard Bay and CoolMoon Corporation (the "Bay Defendants"), and its client, Eran Financial Services, LLC ("EFS"). MSS alleges that EFS poached the Bay Defendants, who then shared MSS's trade secrets. The complaint includes four causes of action: breach of contract, open account, tortious interference, and misappropriation of trade secrets. Relying on this Court's federal-question jurisdiction, EFS removed the case, arguing that the complaint turns on MSS's claimed ownership of the software at issue. In other words, EFS contends that MSS's state-court claims are preempted by the Copyright Act—which, in turn, suffuses the case with federal questions.

EFS is mistaken. MSS doesn't allege copyright infringement (or any other federal cause of action), and its state-law claims don't involve substantial questions of federal law. The three contract claims, in fact, don't depend on the assertion of copyright ownership at all. And, as for the trade-secrets claim, the Eleventh Circuit has been pellucid that such a claim is *not* preempted by the Copyright Act because it involves an "extra element" that makes the claim "qualitatively different." This case, in short, presents no federal question—and so, the Court lacks jurisdiction to hear it.

## BACKGROUND

MSS is a Florida corporation in the business of software and system design, development, testing, and automation. *See* Compl. [ECF No. 1-1] ¶¶ 1, 9. In February of 2019, MSS was introduced to Mr. Bay, an experienced software engineer. *Id.* ¶ 10. Mr. Bay began working for MSS in May of 2019 as an independent contractor, but the parties did not execute their Independent Contractor Agreement (the "Agreement") until August 2, 2019. *Id.* ¶ 11.

While the parties were negotiating the Agreement, a dispute arose as to who would be the official contractor—Mr. Bay, in his individual capacity, or Mr. Bay's company, CoolMoon Corporation. *Id.* ¶ 12. Although MSS believed that having Mr. Bay as the lone signatory would better protect its confidential business secrets, it eventually acquiesced and signed an agreement with both Bay Defendants. *Id.*

By signing the Agreement, the Bay Defendants acknowledged that "[a]ll Confidential Information disclosed or furnished under this Agreement shall remain the property of [MSS]." *Id.* ¶ 14. The Agreement also defined the scope of the confidential information it covered. *See id.* Finally, the Bay Defendants covenanted not to divert or solicit clients, or to compete with MSS, for three years after the Agreement was terminated. *Id.* ¶¶ 15–17.

In January of 2020, MSS began selling programming services to EFS and added the Bay Defendants onto the EFS project. *Id.* ¶ 18. Although MSS did not have a written contract with EFS, it billed the client on a monthly basis. *Id.* ¶ 25. But, when EFS fell behind on its payments, *id.* ¶ 28, it (allegedly) poached the Bay Defendants in an effort to obtain MSS's trade secrets, *id.* ¶ 29. And, while the Bay Defendants gave MSS notice of their intent to terminate the Agreement, they refused to return MSS's intellectual property. *Id.* ¶ 31. MSS contends that the Bay Defendants then illegally disclosed MSS's confidential information to EFS. *Id.* ¶ 32.

MSS asserts four claims in its Complaint, which it originally filed in the Seventeenth Judicial Circuit in and for Broward County, Florida. *First*, it says that the Bay Defendants breached their covenants not to solicit clients or to compete with MSS within three years of the Agreement's termination. *Id.* ¶¶ 33–38. *Second*, it alleges that all three Defendants misappropriated MSS's trade secrets in violation of FLA. STAT. § 688.002(4). *Id.* ¶¶ 39–44. *Third*, it avers that EFS has an "open account"—i.e., unpaid invoices. *Id.* ¶¶ 45–47. *Fourth*, it maintains that EFS interfered with the contractual relationship between MSS and the Bay Defendants. *Id.* ¶¶ 48–53.

EFS removed the case on January 4, 2021, asserting that "[a] substantial disputed issue of federal law is a necessary element" of MSS's claims—specifically, the Copyright Act's application to MSS's (purported) copyright in the software at issue. *See* Notice of Removal [ECF No. 1] at 2. According to EFS, MSS "claims to be the owner of that software and related intellectual property, and as a result seeks to enjoin [EFS] from using that software." *Id.* at 3. MSS moved to remand, arguing (1) that its Complaint asserts neither a copyright claim nor any ownership interest, and (2) that the state-law claims do not involve substantial questions of federal law. *See* Motion to Remand ("Motion") [ECF No. 14] at 2. The Motion is now ripe for review. *See* Defendant's Response in Opposition to Plaintiff's Motion to Remand ("Response") [ECF No. 21]; Reply in Support of Motion to Remand [ECF No. 24]. This Order follows.

## THE LAW

The Court has a duty to "zealously insure that jurisdiction exists over a case." *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001). A federal court should, therefore, remand to state court any case that has been improperly removed. *See* 28 U.S.C. § 1447(c). "Not only does the language of the Act of 1887 evidence the Congressional purpose to restrict the jurisdiction of the federal courts on removal, but the policy of the successive acts of Congress regulating the jurisdiction of federal courts is one calling for the strict construction of such legislation." *Shamrock Oil & Gas Corp. v. Sheets*,

313 U.S. 100, 109 (1941). Indeed, "[d]ue regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined." *Healy v. Ratta*, 292 U.S. 263, 270 (1934).

Under 28 U.S.C. § 1331, federal courts have federal-question jurisdiction over suits "in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Newton v. Capital Assurance Co.*, 245 F.3d 1306, 1308–09 (11th Cir. 2001). "The federal cause of action or question of federal law must be apparent from the face of the well-pleaded complaint and not from a defense or anticipated defense." *Id.* Because the plaintiff is the master of its complaint, it is "free to avoid federal jurisdiction by pleading only state law claims even where a federal claim is also available." *Hill v. BellSouth Telecomms., Inc.*, 364 F.3d 1308, 1314 (11th Cir. 2004). The plaintiff cannot avoid federal jurisdiction, however, if either (1) federal law completely preempts the state-law claim or (2) the state-law claim raises substantial questions of federal law. *See Dunlap v. G & L Holding Corp.*, 381 F.3d 1285, 1290 (11th Cir. 2004). For a state-law claim to advance a "substantial" question of federal law, it's not enough that the state-law claim requires proof of a violation of federal law. *See id.* at 1292. Instead, federal law must be an "essential" element of the state-law claim. *See id.*

The Eleventh Circuit has set forth a two-part test for district courts to use in assessing whether a state-law claim is preempted by the Copyright Act: *first*, the court "must decide whether the rights at issue fall within the 'subject matter of copyright' set forth in sections 102 and 103"; *second*, the court must determine "whether the rights at issue are 'equivalent to' the exclusive rights of section 106." *Crow v. Wainwright*, 720 F.2d 1224, 1225–26 (11th Cir. 1983). On the issue of whether state-law claims involve rights "equivalent to the exclusive rights under section 106," the Eleventh Circuit has used the "extra element" test: if the state-law claim requires proof of an "element that is not required under

4

copyright law[,] and thereby makes the state law claim qualitatively different from a copyright claim, the state law claim is not preempted." *Foley v. Lunster*, 249 F.3d 1281, 1285-86 (11th Cir. 2001).

Applying this test, the Eleventh Circuit has said that it has "no doubt that the Florida trade secrets statute . . . satisfies the 'extra element' test generally employed by courts in performing copyright preemption analysis," because that state-law claim requires the plaintiff to prove a confidential relationship. *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1549 (11th Cir. 1996); *see also Ecometry Corp. v. Profit Ctr. Software, Inc.*, 2006 WL 8435441, at *3 (S.D. Fla. July 13, 2006) ("[C]laims under the Florida trade secrets statute are not preempted by the federal Copyright Act because of the necessity of pleading a confidential relationship between the plaintiff and the defendant.").[1] Following these precedents, in *Energy Control Technologies, Inc. v. Honeywell International, Inc.*, 2005 WL 8155412 (S.D. Fla. Dec. 28, 2005), this Court remanded a case to state court where (as here) the plaintiff claimed that the defendants had misappropriated certain trade secrets in violation of Florida law. As the Court explained—in words that apply with equal force here—"there [was] no preemption or 'substantial' question of federal law." *Id.* at *2.

---

[1] The other circuits to consider this issue have come to the same conclusion. *See GlobeRanger Corp. v. Software AG United States of Am., Inc.*, 836 F.3d 477, 486 (5th Cir. 2016) ("Because trade secret law protects against not just copying but also any taking that occurs through breach of a confidential relationship or other improper means, all ten circuits that have considered trade secret misappropriation claims have found them not preempted by the Copyright Act." (collecting cases)); *see also, e.g., Strombaugh v. NewLine Cinema*, 384 F.3d 283, 303–06 (6th Cir. 2004) ("[T]he district court failed to recognize that a considerable number of cases have held that misappropriation of trade secrets claims are not preempted because they require proof of a confidential relationship, which provides the extra element required to survive preemption."); *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting*, 307 F.3d 197, 218 (3d Cir. 2002) ("A state law misappropriation of trade secrets claim that requires a proof of breach of duty of trust or confidence to the plaintiff through the improper disclosure of confidential materials is qualitatively different because it is not an element of copyright infringement. The breach of duty or trust represents unfair competitive conduct qualitatively different from mere unauthorized copying." (internal quotation marks omitted)).

## ANALYSIS

According to EFS, three of the Complaint's allegations—and one of its requests for relief—indicate that the case turns on application of the Copyright Act. In EFS's view, these four preempted components are: (1) the allegation that the Agreement included the "[c]reation of [i]ntellectual [p]roperty," Compl. ¶ 27; (2) the assertion that MSS's coding and engineering is "a trade secret subject to both contractual and statutory protections," *id.* ¶ 41; (3) the averment that MSS "owns" its work product, *id.* ¶ 43; and (4) MSS's attempt to enjoin EFS's use of the software, *id.* at p.10. *See* Response at 2–3. We address each in turn.

Let's start with the trade-secrets claim. Even if we assume that the allegation EFS cites involves rights "within the subject matter of copyright,"[2] EFS completely ignores *both* the "extra element" test and the teachings of *Energy Control Technologies*—viz., that a plaintiff may choose *not* to assert a copyright claim, even if one is available, and that, to avoid this Court's federal-question jurisdiction, the plaintiff may proceed under the Florida trade-secrets statute. *See Energy Control Techs.*, 2005 WL 8155412, at *2 ("That the defendants may also have copied or created copyrighted software by using the source code does not lead to a finding of federal preemption, nor does it demonstrate that there are 'substantial' issues of federal law.").

EFS argues that the "crucial difference" between *Energy Control Technologies* and this case is that MSS "does not allege to have owned anything prior to its relationship with EFS; instead, [MSS] admits that it was engaged to help develop a software for EFS and [MSS] now claims ownership of that software," whereas in *Energy Control Technologies* "no such relationship between the plaintiff and the defendant was alleged." Response at 7. This is an odd argument for EFS to make. A Florida trade-

---

[2] *Cf. Priority Payment Sys., LLC v. Signapay, Ltd.*, 161 F. Supp. 3d 1285, 1292 (N.D. Ga. 2015) (finding that the complaint's allegations fell within the Copyright Act when the plaintiff alleged that it "own[ed] the copyright").

6

secrets claim is *not* preempted by the Copyright Act because the Florida cause of action requires the "extra element" of a confidential relationship with the defendant. *See Bateman*, 79 F.3d at 1549 ("[S]tate law trade secret statutes have been deemed not to be preempted because the plaintiff must prove the existence and breach of a confidential relationship in order to prevail."). By pointing out that MSS's claim is based, not on its "prior" ownership, but on its "relationship with EFS," EFS seems to suggest that MSS *did* allege a prima facie case of misappropriation. That, though, would only *strengthen* MSS's position on remand under the logic of *Energy Control Technologies*.

In any event, EFS is mistaken when it suggests that *Energy Control Technologies* is meaningfully different from our case. In that case, the plaintiff "pled a confidential relationship" with its former employee and alleged that the employee and a second company had conspired to misappropriate the plaintiff's trade secrets. *See Energy Control Techs.*, 2005 WL 8155412, at *2. Likewise, here, MSS alleges a confidential relationship with its independent contractors. *See* Compl. ¶ 14 (alleging that the Bay Defendants agreed to confidentiality in the Agreement). The only possible difference between the two cases is that, in *Energy Control Technologies*, the plaintiff didn't have a contractual relationship with the poaching company, *see Energy Control Techs.*, 2005 WL 8155412, at *1 ("[T]he defendants embarked on a course of 'industrial espionage' in order to avoid contracting with and paying Energy Control for its source code"), whereas MSS did have a commercial relationship with EFS, *see id.* ¶ 18.

In EFS's view, this "distinction" shows that "[c]opyright ownership was simply not a dispute in that case. Here, it is the central issue." Response at 7. That's quite the leap. Copyright wasn't at issue in *Energy Control Technologies* because the plaintiff chose to allege misappropriation of trade secrets, rather than copyright infringement—and trade-secret claims aren't preempted by the Copyright Act. *See Energy Control Techs.*, 2005 WL 8155412, at *2 ("That the defendants may also have copied or created copyrighted software by using the source code does not lead to a finding of federal preemption, nor does it demonstrate that there are 'substantial' issues of federal law."). The same is

7

true here, irrespective of EFS's desire to turn copyright ownership into the "central issue" in this case. The Plaintiff, recall, is master of its complaint. MSS's trade-secrets claim requires it to establish a confidential relationship. Because this element doesn't appear in a Copyright Act claim, the Copyright Act doesn't preempt MSS's trade-secrets claim. *See, e.g.*, *Ecometry*, 2006 WL 8435441, at *3 ("[C]laims under the Florida trade secrets statute are not preempted by the federal Copyright Act because of the necessity of pleading a confidential relationship between the plaintiff and the defendant."). Nor does EFS even attempt to explain how the misappropriation claim otherwise involves substantial questions of federal law. *See generally* Response.

Instead, EFS appears to argue—in direct contravention of clear Eleventh Circuit precedent—that the trade-secrets claim is completely preempted by the Copyright Act. *See id.* at 4. In support, it cites two inapposite cases. *See id.* (citing *Rosciszewski v. Arete Assocs., Inc.*, 1 F.3d 225, 229–33 (4th Cir. 1993), and *Priority Payment Sys.*, 161 F. Supp. 3d at 1291). But both cases held that the Copyright Act preempted *computer-protection* claims—not trade-secrets claims—because "the core" of those computer-protection claims "involved unauthorized copying of a computer program." *Rosciszewski*, 1 F.3d at 230 (holding that the Virginia Computer Crimes Act was preempted by the Copyright Act). Had EFS read a bit further, it would have seen that the court in *Rosciszewski* explicitly *distinguished* computer-protection claims from trade-secret claims, noting that the former *are* preempted while the latter *are not*. *See id.* (explaining that the plaintiff's claim "under the Virginia Computer Crimes Act does not require proof of elements beyond those necessary to prove copyright infringement," whereas claims of misappropriation of trade secrets are "*not* preempted by § 301(a) [of the Copyright Act]" (emphasis added)).

And, in *Priority Payment Systems*, the district court simply followed *Rosciszewski*, reasoning that the "Georgia Computer Systems Protection Act" was "nearly identical" to the Virginia Computer Crimes Act. *See Priority Payment Sys.*, 161 F. Supp. 3d at 1292. But it never held—as EFS suggests—

that a trade-secrets claim rendered the case removable. *Compare* Response at 4 (describing *Priority Payment Systems* as holding that the plaintiffs' claims for misappropriation of trade secrets made the case removable), *with Priority Payment Sys.*, 161 F. Supp. 3d at 1293 (explaining that the court was exercising only "supplemental jurisdiction" over the Georgia Trade Secrets Act claim).[3]

Having established that the trade-secrets claim is not preempted and does not involve issues of federal law, we need not linger on the contract claims. EFS doesn't make any real effort to argue that they are preempted by the Copyright Act. *See generally* Response; *see also id.* at 5 ("[T]he Copyright Act is implicated by the Complaint and is an essential element of [MSS's] claims, and *in particular*, in the allegations assumed for *its claim for misappropriation of trade secrets*." (emphasis added)). And it's clear that they're not.

For one thing, whether the Bay Defendants breached the Agreement by competing with MSS or soliciting clients has nothing to do with whether MSS had any exclusive rights under the Copyright Act. Put differently, the contract claim turns on (1) the existence of a valid contract and (2) the Bay Defendants' breach of its material terms. Neither element depends on any aspect of copyright ownership. *See Utopia Provider Sys., Inc. v. Pro-Med Clinical Sys., L.L.C.*, 596 F.3d 1313, 1327 (11th Cir. 2010) (noting that a contract claim's requirement that the plaintiff establish the existence of a valid licensing agreement provided the "extra element" that pushed the claim outside of Copyright Act preemption); *Lipscher v. LRP Publications, Inc.*, 266 F.3d 1305, 1318 (11th Cir. 2001) (finding that a contract claim was not preempted by the Copyright Act because the plaintiff "sought to enforce rights

---

[3] One more point about the trade-secrets claim. EFS appears to take issue with MSS's request for injunctive relief, as though that request somehow raises substantial questions of federal copyright law. *See* Response at 2–3 (citing the requested injunction as evidence of preemption); *id.* at 5–6 ("[B]y claiming ownership of the 'intellectual property' to the software, [MSS] seeks to enjoin EFS from using the software."). But the Florida trade-secrets statute itself provides for injunctive relief. *See* FLA. STAT. § 688.003(1) ("Actual or threatened misappropriation may be enjoined."). MSS's request for injunctive relief under Florida law thus advances no substantial question of federal law.

created by a simple two-party contract, not copyright rights"); *see also, e.g.*, *Sharp v. Patterson*, 2004 WL 2480426, at *8–9 (S.D.N.Y. Nov. 3, 2004) ("State law breach of contract claims are generally not preempted by the Copyright Act, so long as the claim is based on allegations of a contractual right not existing under copyright law."). The same is true for the "open account" claim MSS has levied against EFS, which is based on the "work and skilled labor" MSS provided to EFS, *see* Compl. ¶ 47—rather than on some assertion of copyright ownership. Ultimately, EFS does not and cannot explain why these contractual rights and obligations—involving non-competition and non-solicitation clauses and the payment of invoices—are preempted by (or otherwise involve substantial questions of) federal copyright law.

As for the tortious-interference claim, the Eleventh Circuit has similarly held that, unless the claim is based on the unauthorized exploitation of copyrighted material, it is *not* preempted by federal copyright law. *See Telecom Tech. Servs. Inc. v. Rolm Co.*, 388 F.3d 820, 833 (11th Cir. 2004) (where "[t]he tortious interference claim require[d] [the plaintiff] to demonstrate that [the defendants] violated the terms of [the plaintiff's] software license for third parties," the claim went "beyond federal copyright law that prohibits unauthorized copying" and was not preempted); *see also, e.g.*, *Graham Ins. Grp., Inc. v. Statronics, Inc.*, 2011 WL 13217020, at *6 (S.D. Fla. Jan. 24, 2011) (explaining that courts, "in the preemption context, have distinguished between tortious interference claims involving contractual rights and those involving an exclusive right under the [Copyright] Act," and adding that, "when a state law cause of action is based solely on a defendant usurping an exclusive right reserved to the copyright holder, the claim is preempted," but "where the claim seeks enforcement of a party's contractual rights, even if the subject matter of the claim is copyrighted material, the claim is not preempted by the Act").

Again, EFS doesn't explain how or why the tortious-interference claim is preempted. *See generally* Response. Nor could it. That claim, after all, does not depend on MSS's assertion of any rights

under the Copyright Act. Instead, in this claim MSS merely alleges that EFS interfered with the independent-contractor relationship between MSS and the Bay Defendants by poaching the Bay Defendants—a claim that's, by its terms, entirely disconnected from any assertion of copyright ownership. *See* Compl. ¶ 19 ("EFS directly contacted the Bay Defendants and solicited that they become direct employees of EFS."); *id.* ¶ 52 ("EFS'[s] interference with the known contractual relationship between [MSS] and the Bay Defendants was intentional.").[4]

Finally, we turn to MSS's request for attorneys' fees. *See* Motion at 4–5. The removal statute provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The standard for awarding fees under the statute turns on the reasonableness of the removal: "[a]bsent unusual circumstances, courts may award attorneys' fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Bentley v. Miami Air Int'l, Inc.*, 377 F. Supp. 3d 1337, 1344 (S.D. Fla. 2019) (quoting *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005)). Although it's a close call, the Court finds that there was an objectively reasonable basis for removal. EFS could have believed that there were "substantial questions" of federal law, as that standard is admittedly imprecise. MSS's request for attorneys' fees is therefore denied.

---

[4] EFS says (almost as an aside) that "[it] has filed a counterclaim for declaratory relief under the Copyright Act, and may have affirmative defenses relating to the Copyright Act." Response at 6. But it does not try to argue that either its counterclaim or its defenses could create removal jurisdiction. *See generally id.*; *see also Fla. Health Scis. Ctr., Inc. v. Sackler*, 2020 WL 1046601, at *3 (S.D. Fla. Jan. 24, 2020) ("[B]ecause a federal question must appear on the face of Plaintiffs' Complaint to satisfy the well-pleaded complaint rule, a defense that presents a federal question cannot create removal jurisdiction." (citing *Kemp v. Int'l Bus. Machines Corp.*, 109 F.3d 708 (11th Cir. 1997)); *Naftali v. Capasso*, 2015 WL 12826495, at *1 (S.D. Fla. June 17, 2015) ("It is well-settled that 'a counterclaim—which appears as part of the defendant's answer, not as part of the plaintiff's complaint—cannot serve as the basis for 'arising under' jurisdiction.'" (quoting *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 831 (2002)).

\*\*\*

Having carefully reviewed the record and the governing law, the Court hereby **ORDERS** and **ADJUDGES** as follows:

1. The Motion [ECF No. 14] is **GRANTED in part**—except for MSS's request for attorneys' fees.
2. The case is **REMANDED** to the Seventeenth Judicial Circuit in and for Broward County, Florida.
3. The Clerk shall **CLOSE** this case. All pending deadlines are **TERMINATED**, and any pending motions are **DENIED** as moot.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 10th day of February 2021.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record